Charlie **KEA**, Petitioner,

v.

Robert **TURNER**, Warden of Central Prison, and the State of North Carolina, Respondents.

Civ. A. No. 1865.

United States District Court
E. D. North Carolina,
Raleigh Division.

July 12, 1966.

No appearance for petitioner.

Thomas W. Bruton, Atty. Gen., of N. C., for respondents.

OPINION and JUDGMENT

DALTON, District Judge (by designation).

This cause comes before the Court upon a petition for a writ of habeas corpus filed *in forma pauperis* by a State prisoner pursuant to the provisions of 28 U.S.C. § 2254 (1959). Issues have been joined by respondents upon the filing of an answer and motion to dismiss.

Petitioner pleaded guilty to a charge of murder in the first degree and, on January 20, 1965, was sentenced to life imprisonment by the Edgecombe County Superior Court, Tarboro, North Carolina. The case was not appealed to the Supreme Court of North Carolina, but Mr. Kea did file a petition for a post-conviction hearing, which request was granted. Petitioner alleged that he was coerced into making incriminating statements which were damaging to him at trial, that he was without benefit of counsel during police interrogation, that when counsel was appointed, said counsel misled him and was ineffective because he refused to put certain witnesses on the stand, and that he was generally denied due process and equal protection of the law. On August 19, 1965, this petition was denied and dismissed by the Edgecombe County Superior Court, after a full hearing had been conducted.

Mr. Kea's petition for habeas corpus is quite similar to the petition for a post-conviction hearing. Here he alleges that he was relentlessly interrogated and beaten severely by the arresting officers, that he was denied counsel during interrogation, that he was detained incommunicado for three days before a warrant was read to him, that counsel misled him into thinking he was being tried for second degree murder, and that counsel was utterly ineffective at the trial. All these statements were made under oath by the petitioner, and from the transcript of his post-conviction hearing, it is obvious that they were all intentional fabrications.

The Court will note at this point that at the time of petitioner's post-conviction hearing the presiding judge was careful to make certain that Mr. Kea understood that he would be bound by the sworn testimony that he was about to give, and that it was possible that what he said could be used against him in the future.

Petitioner testified that the petition for post-conviction hearing was drawn up for him by another prisoner and that he did not understand very much of it. The Court will assume that the petition for habeas corpus was also drafted by another, especially in light of the similarities between the two documents and the fact that Mr. Kea has only a third grade education. The attorney appointed to represent petitioner at the post-conviction hearing, Mr. Roberts, noted to the Court that petitioner had told him that the petition was prepared by someone else, and that he, as a lawyer, could find nothing upon which to base the contention of an unfair trial. After fully reviewing the evidence presented, this Court has come to the same conclusion. In fact, Mr. Kea's trial seems to have been an exemplary model of outstanding and completely fair judicial procedure. The Court will consider each of petitioner's contentions, however, since they appear in the application for writ of habeas corpus:

(1) petitioner testified that before his hearing before Mr. Price, the Justice of the Peace, he was not questioned at all by any officer, and that his attorney was present at this preliminary hearing (two attorneys were appointed for and represented petitioner at his trial). The charge of relentless interrogation, then, is a deliberate falsehood.

(2) petitioner testified that both lawyers discussed the case fully with him and explained in detail all of the consequences attendant upon his plea of guilty. He further stated that they did not mislead him in any way, and particularly that they did not advise him that he would be allowed to plead guilty to second degree murder.

(3) petitioner testified that he knew nothing about the beatings which were alleged in his petition, but that he was asleep and drunk when they allegedly took place and that his wife had later told him the details. Both Mr. and Mrs. Kea admit that no statements were elicited from the petitioner as a result of the alleged beatings. The Court finds that the attacks on Mr. Kea actually did not

occur and it would appear that the allegations are a further result of the fabrications of his prison "attorney."

(4) petitioner testified that he fully understood the implications of his plea of guilty to the charge of first degree murder, and the trial transcript shows that Judge Hubbard took great pains to make certain that the defendant was not confused in any way, that he had not been influenced by anyone, and that he had been fully satisfied with the representation which had been given by his counsel, Mr. Rouse and Mr. Warner.

It is evident that the representation received by Mr. Kea from Mr. Rouse, Mr. Warner, and later from Mr. Roberts was of the highest caliber. All are experienced and highly competent attorneys, and they devoted a great deal of time and effort to petitioner's cause. Mr. Rouse and Mr. Warner did their best to present every aspect and possibility of the case to Mr. Kea so that he could make the best decision possible under the circumstances. The Court is convinced that his plea of guilty was completely voluntary and was not influenced in any way by remarks of his attorneys.

Along the same line, the trial judge conducted the proceedings with the utmost candor and fairness. It seemed obvious that the petitioner's plea of guilty was the proper one under the circumstances (particularly so since there were eyewitnesses to the killing), but Judge Hubbard would not accept it until he was sure that Mr. Kea fully understood its implications and had not been coerced in any way into making it.

Petitioner has testified that all of the allegations in his petition for habeas corpus are false (except for the fact that he simply has no personal knowledge of the severe beatings which were administered to him). Both the habeas corpus and the post-conviction hearing petitions were drawn up by a prison inmate with access to law books who simply sat down and dreamed up virtually every possible defect a trial could have. Since our system of justice is not perfect there are instances of unfair convictions, and these should be remedied as quickly as possible by means of habeas corpus. However, completely false claims, such as the one at bar, have become so commonplace that the entire concept of habeas corpus as a safeguard of our judicial system has been tainted. Apparently, prisoners think they have nothing to lose by swearing to a patently fabricated petition, and there is some chance that they just might get away with the ruse.

Wherefore, it is adjudged and ordered that the petition for writ of habeas corpus be, and the same is hereby denied.

It is further ordered that the respondent's motion to dismiss be, and the same is hereby denied.

It is further ordered that the Clerk serve a copy of this opinion and order upon all of the respondents in the case and the petitioner.